Roland A. **CORLEY**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 19658.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 17, 1966.

Decided June 7, 1966.

As Amended June 22, 1966.

Mr. Thomas H. Truitt, Washington, D. C., with whom Mr. Robert L. Ackerly, Washington, D. C. (both appointed by this court), was on the brief, for appellant.

Miss Carol Garfiel, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker, Asst. U. S. Atty., and Oliver Dibble, Atty., Dept. of Justice, were on the brief, for appellee.

Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and BURGER, Circuit Judge.

EDGERTON, Senior Circuit Judge.

Appellant was convicted in July, 1965, on four counts of assault and one count of carrying a pistol without a license. He was given concurrent sentences the longest of which was 4 to 12 years. All the alleged crimes related to an apparent attempt to rob a tourist home about 4:00 a. m. on March 28, 1965, when the night manager, Samuel Brown, was assaulted. The only evidence tending to connect appellant with the crimes was Brown's identification of him. Appellant not only challenged the identification but, with three friends, testified to an alibi, to the effect that he was in a party at a friend's house when the crimes were committed.

— I —

Appellant and two other witnesses, Mrs. McCoy and Mr. Griffis, all testified the party was on the night of March 27–28. None of these three witnesses said they did not remember the date or that it was the Saturday preceding appellant's arrest. Another defense witness, Mrs. Smith, said "I do not remem-

ber it was exactly March 28 but I knew it was the Saturday prior to his arrest." But it is not clear that she meant the *last* Saturday "prior to his arrest", for she had just testified: "Well, maybe I am not sure it was the 28th but I know it was a Saturday before he was arrested * * *."

In his closing argument the prosecutor said: "The witnesses told you, two or three of them I asked,—I don't think I asked the criminal—the person on probation [Griffis was on probation] * * * The other witnesses testified as to this party, that they didn't remember on what date it was. They didn't remember that it was on March 28th, but the way they fixed the date was that the party was the Saturday preceding the arrest, because when they found out he was arrested, they remembered that he had been at a party * * * the Saturday night preceding that." As the prosecutor pointed out, the Saturday immediately preceding appellant's arrest was not March 28, the date of the crime, but a week later.

 The prosecutor's erroneous account of the alibi testimony was highly prejudicial. The witnesses placed the defendant at a party at the time of the crime. The prosecutor's garbled version of their testimony did not. His misstatements made the difference between a strong alibi and no alibi. If, but only if, the jury relied on his misstatements, it could find the defendant guilty without rejecting as untrue the witnesses' stories about the defendant's presence at the party. The Government's case was not particularly strong. And it "is generally held that whether improper conduct of Government counsel amounts to prejudicial error depends, in good part, on the relative strength of the Government's evidence of guilt." Jones v. United States, 119 U.S.App.D.C. 213, 214 n. 3, 338 F.2d 553, 554 n. 3 (1964). But for the prosecutor's misstatements, the jury might well have found that the alibi testimony created a reasonable doubt.

Appellant's counsel had already objected to the prosecutor's giving the jury his version of Mrs. Smith's testimony and had asked that her testimony be transcribed. After the jury retired it asked to hear her statements and Mrs. McCoy's. The judge refused these requests and did nothing to correct the prosecutor's error. "In these circumstances prejudice to the cause of the accused is so highly probable that we are not justified in assuming its non-existence." Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). Jones v. United States, 119 U.S.App.D.C. 213, 338 F.2d 553 (1964).[1] We must therefore reverse the conviction.

1. In Cross v. United States, 122 U.S.App. D.C. 283, 353 F.2d 454 (1965), because a prosecutor's erroneous statement caused no "substantial prejudice" we affirmed a conviction. The prosecutor's mistake there was in saying that both the defendant's accomplices stated they received no promises from law enforcement officials, whereas in fact only one had so stated; the other had said that officials promised to " 'see what they could do' " if she would cooperate with them, and the charges against her were dropped. There the prosecutor's mistake, though substantial, was relatively minor. If the jury believed the prosecutor's erroneous statement, the defendant's case was not weakened and the government's case was not greatly strengthened; only the weight of one government witness's testimony was affected; whereas in our case, the prosecutor's misstatement, if believed, wiped out a strong alibi which, but for the defendant's own testimony, was his entire case. The government's evidence was stronger in *Cross* than here and it does not appear that the defendant's was as strong there as here. Here, the only evidence that tended to connect the defendant with the crimes was one witness's identification of him, while in *Cross* the testimony of two accomplices was supported by "an admittedly weak identification of appellant by a priest at the robbed church, and testimony by owners of two tourist homes that some hours after the robbery, during the same night, appellant and his accomplices checked into a tourist home, checked out, and then checked into another tourist home for the remainder of the night." 353 F.2d at 455 n. 1. And counsel in *Cross*, unlike counsel in this case, did not object to the prosecutor's giving the jury his version of the witness's testimony and did not ask that the testimony be transcribed.

## — II —

[3] Because a similar question is likely to arise in a new trial, we add that we think the judge should have granted the motion to examine Brown's grand jury testimony *in camera*. This should be done when a principal prosecution witness has made conflicting statements indicating the possibility of an inconsistency between his trial testimony and his grand jury testimony. Harrell v. United States, 115 U.S.App.D.C. 169, 170 n. 5, 317 F.2d 580, 581 n. 5 (1963); Simmons v. United States, 113 U.S.App.D.C. 369, 308 F.2d 324 (1962); De Binder v. United States, 110 U.S.App.D.C. 244, 292 F.2d 737 (1961). Also, it should be done when the Government's case rests upon the contradicted testimony of a single witness. Gordan v. United States, 112 U.S.App.D.C. 33, 299 F.2d 117 (1962). Worthy v. United States, 122 U.S.App. D.C. 242, 352 F.2d 718 (1965), cert. filed 1/5/66, is distinguishable because there a defense witness corroborated the prosecution witness's testimony. After examination, the court should reveal to counsel any inconsistency that is not plainly immaterial. See De Binder v. United States, Gordan v. United States, and Simmons v. United States, *supra*.

Reversed and remanded for a new trial.

BURGER, Circuit Judge (dissenting).

I would remand for *in camera* inspection of Brown's Grand Jury testimony. On that issue it should be noted that it is only a significant inconsistency between trial and Grand Jury testimony which affects *credibility* and warrants making the minutes available to the defense. Gordan v. United States, 112 U.S.App.D.C. 33, 299 F.2d 117 (1962); *cf.* De Binder v. United States, 110 U.S. App.D.C. 244, 292 F.2d 737 (1961).

However, I see no basis for reversal, especially none which justifies the majority's finding plain error in an issue that was not briefed or argued. Again this Court reaches out for issues not considered important by the parties either at trial or on appeal.

The three witnesses referred to by the majority did not volunteer that the party was on March 27–28; they merely said, when asked by the defense where they were the night of March 27, that they were at a party. When Mrs. Smith answered in the same manner, the government cross-examined her as to how she remembered the date. She replied that she was not sure it was the 27th, "but I know it was *a* Saturday before he was arrested * * *." [1] Shortly thereafter she testified that it was *the* Saturday prior to his arrest.

Every concept of appellate functioning in this context leaves the reconciliation of conflicts in testimony to jury decision. The government justifiably argued the version of Mrs. Smith's testimony more favorable to it, *i. e.*, that the party was *the* Saturday before the arrest (April 3), which if accepted by the jury would have destroyed Appellant's alibi that he was at the party the night of March 27, but it incorrectly attributed Mrs. Smith's method of fixing the date to one of the other witnesses. The record before us indicates this mistake was inadvertent, and no party contended otherwise. Defense counsel did not object to it, although he had objected to another part of the prosecution argument.

In his argument defense counsel made a similar mistake by reinforcing his witnesses' testimony with the statement that "these people told you it was the Saturday night of the week before the arrest," meaning by this the Saturday ten days before the arrest (March 27). "These people," however, had not fixed the date of the party by any such benchmarks; they had merely answered that they were at a party with Appellant on March 27. The contested issue was not whether the witnesses had indicated they were at a party with Appellant on March 27 but whether they had any basis for knowing the date of the party. By arguing that they had testified they knew the Saturday on which the party occurred

1. Emphasis added.

was March 27 because of its relation to Appellant's arrest, the defense was attributing to them statements they had not made. Only Mrs. Smith had been asked, on cross-examination, how she fixed the date.

The defense counsel made an additional mistake in his argument by misrepresenting Mrs. Smith's testimony; neither of Mrs. Smith's two answers coincided with defense counsel's version of her testimony. She said it was the Saturday prior to the arrest or a Saturday before arrest; she never pinpointed it as the Saturday night "of the week before the arrest." Defense counsel could attribute that to her only by providing his own interpretation of what Saturday was intended by "a Saturday." Thus, not only did the defense extend the scope of Mrs. Smith's remarks to other witnesses but it also, as the government did not, affirmatively misrepresented her testimony.

One of the purposes of having both sides argue the evidence and the inferences to be drawn is to neutralize or clarify utterances of the opposing counsel. The defense more than neutralized the government's mistake in this case; the defense quite incorrectly summarized Mrs. Smith's testimony and, like the government, attributed it to others.

That the government's misstatement was one of fact and was inadvertent makes absence of an objection from the defense especially relevant. Since the error was in recital of *facts* which the jury had heard from witnesses, a timely objection by the defense would have enabled the prosecutor or the court to correct and remove any prejudicial effect the argument may have had on the jury. Inadvertent errors in arguments to the jury, such as those made by both sides here, are inevitable in the course of most trials; appellate courts ought not reverse whenever such an error occurs, particularly when the error was not sufficient to call forth an objection.

Here defense counsel requested preparation of a transcript of Mrs. Smith's testimony, but that would not have resolved the question of how many had testified as she had. Also the jury interrupted its deliberations to ask that the disputed parts of two witnesses' testimony be read to them. The ruling on such a request, however, must be left to the sound judicial discretion of the District Judge, who must consider, among other factors, whether repeating part of the evidence, especially at that point in the trial, would give it undue emphasis at the expense of the evidence as a whole.

Our recent holding in Cross v. United States, 122 U.S.App.D.C. 283, 353 F.2d 454 (1965), plainly supports affirmance here. There the prosecutor unequivocally stated two witnesses' testimony to be that they had received no promises from the government, when in fact only one had so testified and the other had testified to the contrary—a far more inaccurate representation of the testimony than present in the instant case. In *Cross* the prosecution's case rested primarily on the credibility of the two witnesses referred to, but this court found the argument was not prejudicial error since the defense counsel in his turn reminded the jury that one witness had in fact testified that promises had been made her. This surely was less a corrective than present in the instant case, where the defense did not limit itself to stating the evidence correctly but shaped it incorrectly to fit its case.

I emphasize that the references to defense and prosecution counsels' actions are not intended to intimate misconduct in any sense but to point up that such inaccuracies are not uncommon; it is for this reason a jury is instructed not to rely on recitals of the evidence advanced by counsel in the heat of battle or by the court. But it hardly makes sense to reverse a conviction for prosecution error less significant than erroneous statements by the defense, especially when the Appellant did not urge this as grounds for reversal and the Government had no opportunity to brief or argue the point which the majority "discovered" on this appeal.