UNITED STATES of America

v.

David P. BAIRD.

Crim. No. 87–0076.

United States District Court,
District of Columbia.

May 1, 1990.

Jay B. Stephens, U.S. Atty., John M. Facciola, Joan Draper, Office of U.S. Atty., for the Government.

David Kagan–Kans, Fisher, Morin & Kagan–Kans, P.C., Washington, D.C., for David P. Baird.

OPINION

CHARLES R. RICHEY, District Judge.

On January 27, 1989, the jury returned a verdict in the above-captioned case finding the defendant David P. Baird guilty of violating 18 U.S.C. §§ 203(a) and (c), the federal conflict of interest statute. Now before the Court is a motion by the defendant for

judgment of acquittal.[1] Upon careful consideration of defendant's motion, the supporting and opposing legal memoranda, and the underlying law, the Court will deny the defendant's motion.

Defendant advances essentially three arguments in support of his motion. First, defendant contends that the Court's instructions to the jury concerning the elements of the offense with which defendant was charged were incomplete because they did not contain the level of scienter required for the commission of that offense. Second, defendant maintains that the prosecutor suggested to the jurors that defense counsel was trying to mislead them by raising the issue of "consciousness of wrongdoing," even though "consciousness of wrongdoing" was not an element of the offense with which defendant was charged. Defendant argues that this suggestion by the prosecutor was particularly prejudicial in view of the fact that it was the prosecutor, and not defense counsel, who initially raised the issue of "consciousness of wrongdoing." Moreover, the defendant asserts that the Court improperly deprived him of the opportunity to rebut the government's evidence that defendant consciously knew that his acts were in violation of the law. Finally, defendant maintains that the government improperly read from a transcript, which was not received into evidence, during its rebuttal argument, and that the portion of the transcript read by the prosecutor was extremely prejudicial to him. The Court will address each of defendant's arguments in turn.

The Indictment in this case charges defendant with having violated 18 U.S.C. § 203(a) by receiving or agreeing to receive compensation from the International Science and Technology Institute, Inc. ("ISTI") for services he performed or would perform for ISTI before the United States Coast Guard ("Coast Guard") while he was a special government employee with the Coast Guard. These services allegedly included a personal appearance by defendant on behalf of ISTI at a conference on August 9, 1985, at which ISTI presented a contract proposal to representatives of the Coast Guard concerning the New Orleans Vessel Traffic Systems Project.

The statutory language of 18 U.S.C. § 203(a), in pertinent part, provides:

(a) Whoever, otherwise than as provided by law for the proper discharge of official duties, directly or indirectly—

---

1. After the jury returned a verdict in this case, the parties agreed that defendant would have until February 27, 1989 to file all post-verdict motions, that the government would have until March 20, 1989 to file any opposition to defendant's motions, and that defendant would have until March 27, 1989 to file a reply to the government's opposition. Neither the defendant in his motion for judgment of acquittal nor the government in its opposition to defendant's motion cited to any case law or other authority in support of their respective positions. As such, on March 22, 1989, the Court issued an Order directing the parties to confer in order to decide what portions of the trial transcript would be needed in order to document their respective positions and for defendant to file a memorandum providing citations to the trial transcript and legal authority in support of his various arguments within 20 days of the date of his receipt of the trial transcript and for the government to file an opposition 20 days thereafter. Contrary to the Court's Order of March 22, 1989, the defendant submitted a memorandum on August 8, 1989 wherein he briefed only one of the three objections contained in his motion for judgment of acquittal. Once again, on September 8, 1989, the Court issued an Order directing defendant to provide citations to the transcript and legal authority to support the various grounds he asserted in support of his motion for judgment of acquittal. In its Order of September 8, 1989, the Court also advised defendant that his failure to comply in all respects with the Court's Order of March 22, 1989 by September 22, 1989 would "be deemed a waiver of any and all other claims on which appeal might be asserted." Instead of complying with his deadline of September 22, 1989, defendant filed a motion for an extension of time, which the Court granted. When defendant finally did file a brief in response to the Court's Order of September 8, 1989, he did not brief one of the grounds on which he asserted that he was entitled to a judgment of acquittal, namely the government's use of comments by Mr. Falvey and Mr. Copeland which were contained in a transcript of the August 9, 1985 meeting. The Court construes defendant's failure to brief that argument as a waiver of that argument. Defendant's motion for judgment of acquittal finally became ripe for the Court's consideration on December 27, 1989.

(1) demands, seeks, receives, accepts or agrees to receive or accept any compensation for any representational services, as agent or attorney or otherwise, rendered or to be rendered either personally or by another—

.　　.　　.　　.　　.

B) at a time when such person is an officer or employee of the United States in the executive, legislative, or judicial branch of the Government, or in any agency of the United States, in relation to any proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest or other particular matter in which the United States is a party or has a direct and substantial interest, before any department, agency, court, court-martial, officer, or any civil, military, or naval commission; *or*

(2) *knowingly* gives, promises, or offers any compensation for any such representational services rendered or to be rendered at a time when the person to whom the compensation is given, promised, or offered, is or was such ... employee;

shall be subject to the penalties set forth in section 216 of this title.

18 U.S.C. § 203(a) (emphasis added).

Defendant argues that in instructing the jury on the elements of the offense with

which the defendant was charged, the Court's omission of the term "knowingly" from the elements was error.[2] Section 203(a) contains two subsections. The first subsection makes it a crime to demand, seek, receive, accept, or agree to receive or accept compensation under certain circumstances; the second subsection makes it a crime to *knowingly* give, promise, or offer compensation under certain circumstances. The language of the first subsection, which is the one defendant was charged with violating, is strikingly different from the second subsection in that it does not contain the term "knowingly." Congress' inclusion of the term "knowingly" in subsection 203(a)(2) and its omission of this term in subsection 203(a)(1) provide a strong suggestion that Congress intended to be harsher on government employees who received compensation resulting in a conflict of interest than on the donors of such compensation. *See United States v. Evans*, 572 F.2d 455, 480 (5th Cir.1978) ("The purpose of [the conflict of interest statute] is to reach any situation in which the judgment of a government agent might be clouded because of payments or gifts made to him by reason of his position 'otherwise than as provided by law for the proper discharge of official duty.' "), *cert. denied*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). Moreover, the only logical explanation the Court can discern for Congress' inclusion of the term "knowingly" in one

---

**2.** The Court instructed the jury that the elements of the offense with which defendant was charged were as follows:

1. That on or about August 9, 1985 the defendant received or agreed to receive compensation for services from ISTI, in addition to or apart from his public compensation for his official duties in the United States Coast Guard, for services rendered or to be rendered by him; and

2. That these services were rendered or to be rendered at a time when the defendant was a Special Government Employee of the United States Coast Guard of the United States Department of Transportation, and, had served as a Special Government Employee for more than sixty (60) days in the preceding period of 365 days; and

3. That these services rendered or to be rendered by the defendant for ISTI related to or involved a government contract before the United States Department of Transportation

or an officer thereof in which the United States was a party and had a direct and substantial interest.
*Court's Instructions to the Jury* at 10–11.

In arguing that the Court's instructions on the elements of the offense with which defendant was charged were inadequate, defendant relies, to some extent, upon the decision of the Court of Appeals for this Circuit in *United States v. Nofziger*, 878 F.2d 442 (D.C.Cir.), *cert. denied*, 493 U.S. 1003, 110 S.Ct. 564, 107 L.Ed.2d 559 (1989). That case, however, is distinguishable from this one. In *Nofziger*, the issue was whether the word "knowingly," which appeared in the statutory provision pursuant to which defendant was convicted, modified one or two clauses. In this case, the issue is whether knowledge is an element of the offense charged even though the term "knowingly" does not appear in the statutory provision under which the defendant was convicted.

subsection and its exclusion in the other is Congress' intent to treat government employees receiving payments from those interested in matters in which the United States is a party or has a direct or substantial interest more harshly than the donors of such payments. *See Carter v. Director, Office of Worker's Compensation Programs,* 751 F.2d 1398, 1401 (D.C.Cir.1985) (explaining that maxim of statutory construction *"expressio unius est exclusio alterius"* only applies "when there is no apparent reason for the inclusion of one disposition and the omission of a parallel disposition except the desire to achieve disparate results").

Even assuming that the omission of the term "knowingly" from subsection 203(a)(1) amounted to nothing more than inadvertence on the part of Congress, the fact that the Court did not include the term "knowingly" in its instructions to the jury concerning the elements of the crime with which defendant was charged is not fatal. Immediately after the Court outlined the elements of the offense for the jury, the Court instructed the jury as follows:

> All crimes require some kind of intent. Intent means that a person had a purpose to do a thing. It means that he or she acted with the will to do a thing. It means that he or she acted consciously or voluntarily, and not inadvertently or accidentally.

> Some criminal offenses require a "general intent" and others require a specific intent. This offense requires only a general intent. That means that, if you find that the defendant *knowingly* committed the act that the law here involved makes a crime, you may infer his intent to com-

mit the offense from the fact that he did the illegal acts.[3]

Moreover, the fact that the Court instructed the jury on the question of intent after it instructed the jury as to the elements of the charged offense does not give the intent instruction any less weight. The Court instructed the jury that it was "to consider all of [the Court's] Instructions as a whole," and that it was not to "disregard any Instruction, or give special attention to any one Instruction, or question the wisdom of any rule of law." [4]

■ Plaintiff argues that he was prejudiced by the Court not permitting him to introduce evidence to rebut the government's argument that defendant knew what he was doing was in violation of the law. At bottom, any such evidence would have been irrelevant because defendant was charged with a general intent crime. As such, evidence as to defendant's consultation with lawyers prior to his appearing before the Board on August 9, 1985 or his ignorance of the federal conflict of interest statute and its commands would not have provided defendant with a basis for a valid defense. *Compare United States v. Bristol,* 473 F.2d 439, 443 (5th Cir.1973) (ignorance of the law is not a defense to a general intent crime) *with United States v. Chavis,* 772 F.2d 100, 108 (5th Cir.1985) ("ignorance of the law is relevant to the issue of specific intent"). The Court even instructed the jury accordingly.[5]

■ Defendant's argument that he was prejudiced by the prosecutor suggesting in his rebuttal argument that his lawyer was attempting to mislead the jury by raising the issue of "consciousness of wrongdoing" must also fail.[6] In response to defendant's

---

**3.** *Court's Instructions to the Jury* at 12–13 (emphasis added).

**4.** *Id.* at 2.

**5.** *See Court's Instructions to the Jury* at 14 ("[B]ecause the federal conflict of interest statute is a general intent statute, consultation with lawyers or even ignorance of the statute and its commands is not a valid defense to the crime charged.").

**6.** The portion of the government's rebuttal argument that the defendant finds objectionable on

the ground that it suggests that his attorney was trying to mislead the jury is as follows:

> [S]ome of these things that [Mr. Kagan-Kans] identifies as issues in this case, and he stands up here and tells us that this is what the case is all about, they're not in there. They're not in there, and you won't hear them; so don't be misled on that.

> This case is not, as he says, about intention to mislead. He is saying that. You won't find anything about an element of intending to mislead; that by these appearances, by this

argument, the government asserts that its rebuttal argument was invited by certain statements that defendant's lawyer made in his closing argument. The Court is not in a position to decide whether the prosecutor's rebuttal argument was invited by or responsive to the closing argument of defendant's lawyer because of the passage of a significant period of time since the parties made their closing arguments and the absence of a transcript of those arguments.[7] As such, for the purpose of defendant's motion only, the Court will assume that the prosecutor's comments were not responsive to or invited by the closing argument of defendant's lawyer.

"When examining a prosecution's rebuttal argument for constitutional error, [the issue is] whether the prosecution's comments ' "so infected the trial with unfairness as to make the resulting conviction a denial of due process." ' " *United States v. Turk,* 870 F.2d 1304, 1308 (7th Cir.1989) (quoting *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. De Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))). In other words, the Court is required to examine the objectionable comments in the context of the entire record "and consider the probable effect that the prosecution's comments had on the jury's ability to judge the evidence fairly." *Turk,* 870 F.2d at 1308 (citing *United States v. Young,* 470 U.S. 1, 12, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985)); *see also United States v. O'Connell,* 841 F.2d 1408, 1428 (8th Cir.1988) (explaining that prosecutorial misconduct must be evaluated in context of the entire trial record). Any comments that the prosecutor made about defendant's lawyer injecting the issue of "consciousness of wrongdoing" into the case, when reviewed in the context of the

record as a whole, "did not substantially influence the jury decision or infect the trial with unfairness. The error, if any, was harmless." *Turk,* 870 F.2d at 1309; *see also O'Connell,* 841 F.2d at 1428–29 (holding that any harm resulting from personal attacks that the prosecutor made on defense counsel was "fully outweighed by the properly admitted evidence, which provided ample and convincing proof of [defendants'] guilt").

▌ Finally, defendant argues that the prosecutor's closing argument was improper in two respects. The first is that the prosecutor misread what was contained in a transcript of the August 9, 1985 conference, a tape recording of which was played for the jury by the defendant. The second is that the transcript was never received into evidence. Although defendant is correct that it was improper for the prosecutor to use the transcript in his rebuttal argument, "[i]mproper argument by the prosecutor is not grounds for reversal unless there is 'substantial prejudice as well as error.' " *United States v. Kim,* 595 F.2d 755, 768 (D.C.Cir.1979) (quoting *Cross v. United States,* 353 F.2d 454, 456 (D.C.Cir. 1965)); *see also United States v. Flake,* 746 F.2d 535, 542 (9th Cir.1984) ("Improprieties in counsel's argument to the jury do not require a new trial unless they 'are "so gross as probably to prejudice the defendant," and any resulting prejudice is not "neutralized" by the Court's instructions.' " (citations omitted)), *cert. denied,* 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1985). When examined in the context of the entire trial record, the prosecutor's reading from the transcript did not substantially prejudice the defendant's rights and amounted only to harmless error. *See United States v. Miranda,* 556 F.2d 877, 879–80 (8th Cir.1977) (denying motion for a

---

compensation, that he intended to mislead. You won't hear it, you won't hear it at all.

If you hear it, let's put it back in the case, but you won't hear it, and you won't hear anything about consciousness of wrongdoing. You heard that from Mr. Kagan–Kans, but you're not going to hear anything—about that as being one of the issues that, under the elements of the offense, that we have to prove that you have to decide, because it's not going

to be there. Mr. Kagan–Kans, we submit, is raising these for you, but don't be misled by those issues, and I'll come back to those.
*Transcript of Government's Closing Rebuttal Argument* at 3–4.

7. The parties only requested the Court Reporter to transcribe the trial testimony and the government's rebuttal argument.

mistrial where prosecutor in his rebuttal argument read from transcript of a wiretap tape which was played for the jury at trial).

In his rebuttal argument, the prosecutor in this case stated as follows:

> Mr. Falvey says, "Meaning 360 days a year, or just how many days do you go a year?" And David Baird says, "How many days of reserve work do you go a year?" How does he do all these as a reservist? How can he possibly accomplish everything he's telling him he's done as a reservist? So what does Baird pay? *"Currently, statuswise, I'm unemployed," he says.*[8]

During the prosecutor's cross-examination of the defendant, the prosecutor had discussed with the defendant the portion of the transcript from which he read during his rebuttal argument. In going over the transcript, the prosecutor had asked the defendant how he responded when Mr. Falvey asked him "How many days of reserve work do you do a year?"[9] The defendant told the prosecutor that he told Mr. Falvey *"currently status-wise I was on, I was unemployed.* Then I started thinking, because of termination at Automatic Power."[10]

While defendant used the past tense in responding to Mr. Falvey's question, the prosecutor used the present tense in his rebuttal argument when describing defendant's response to Mr. Falvey's question. Although the prosecutor may have misspoken in changing defendant's response from the past to the present tense, it is doubtful that this change prejudiced defendant when defendant's response to Mr. Falvey's question is examined in context. First, it appears that defendant's use of the past tense was a slip of the tongue because he was responding to a question asked of him in the present tense. In addition, he began his response with the word "currently." Moreover, defendant's lawyer, in his cross-examination of Lieutenant Commander Donald Ray Opedal, elicited testimony to the effect that defendant represented at the August 9, 1985 meeting that he was unemployed.[11] Finally, the Court instructed the jurors that the arguments of counsel were not evidence and that their recollection of the evidence controlled.[12] *See, e.g., United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir.1988) (holding that district court acted within its discretion in denying motion for mistrial when prosecutor commented on matter not in evidence in closing argument because "comment was not sufficiently prejudicial when taken together with the court's later jury instruction that '[the jury's] recollection of the evidence controlled and that the attorney's arguments were not evidence' "); *United States v. Sarmiento*, 744 F.2d 755, 762 (11th Cir. 1984) ("Although ... prosecutor's closing did contain improper remarks, [a mistrial was not warranted because] those remarks were inadvertent rather than malicious, ... they were not substantially prejudicial, and ... any lingering prejudice was cured by the court's instruction to the jury.").[13]

For the reasons set forth herein, the defendant's motion for a judgment of acquittal is denied.

---

**8.** *Transcript of Government's Closing Rebuttal Argument* at 15–16 (emphasis added).

**9.** *Transcript of Trial Testimony—Volume 3* at 108.

**10.** *Id.* at 109 (emphasis added).

**11.** Q And you indicated, you were asked, did he, was his current status with the Coast Guard described, and it was said that he was not on active duty, correct?
A That's correct.
Q And in fact, and you also answered that he said, or that the information was provided that he was unemployed at the time?
A He made a statement to the fact that he was unemployed.
*Transcript of Trial Testimony—Volume I* at 167.

**12.** *Court's Instructions to the Jury* at 3, 4.

**13.** It should be noted that the defendant's lawyer did not make any request for a special curative instruction. That the prosecutor's reading from the transcript "was not prejudicial is backhandedly supported by defense counsel who chose to de-emphasize it by not requesting a curative instruction." *Ashworth*, 836 F.2d at 267 n. 8 (citing *United States v. Whitley*, 734 F.2d 1129, 1135 (6th Cir.1984)).